[Docket Items 25 and 26]

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HERBERT J. NELSON, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 05-5705 (JBS) |
| v. | |
| BORGATA HOTEL CASINO & SPA, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

Mr. Herbert J. Nelson
P.O. Box 5933
Wilmington, DE 19808
    Plaintiff, pro se

Russell L. Lichtenstein, Esq.
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401-4891
    Attorney for Defendant Borgata Hotel Casino & Spa

**Simandle, District Judge:**

**I.   INTRODUCTION**

This matter is before the Court on the Motion for Summary Judgment by Defendant Borgata Hotel Casino & Spa ("Defendant" or "Borgata") [Docket Item 25] and the Cross-Motion for Summary Judgment by Plaintiff Herbert Nelson [Docket Item 26]. For the reasons explained, the Court shall grant summary judgment to Defendant and deny summary judgment to Plaintiff.

**II.   BACKGROUND**

In January 2003 Plaintiff Herbert Nelson applied for two positions at the Borgata for which he was not hired: one as an HVAC (heating, ventilation and cooling) mechanic and one as an HVAC "Lead" (i.e., supervisor).

Borgata's posted announcement for the HVAC Lead position for which Plaintiff applied described several responsibilities for which Plaintiff did not have relevant experience or training. The Lead was responsible for troubleshooting, repairing, and maintaining all HVAC, refrigeration, exhaust, and building maintenance (computer) systems; and would electronically maintain accurate property information through daily use of Borgata's software and e-mail.  ("HVAC Lead" in Ex. B to Def.'s Mot for Summ. J. at 72).  Required qualifications for the job included ten years of experience in the HVAC trade in a large casino/hotel complex as well as blueprint and schematic reading skills.  (Id.)

While Plaintiff had extensive HVAC experience, including supervisory experience, that experience was all in the federal government; he had never worked in a casino; and most significantly he had no experience with computerized building management systems.

HVAC mechanics were also responsible for using electronic communications to maintain accurate property information and were required to have five years of experience in the HVAC trade in a

large casino/hotel complex as well as blueprint and schematic reading skills. ("HVAC Mechanic" in Ex. B to Def.'s Mot for Summ. J. at 71).

Nelson filed a charge with the EEOC, which filed suit on his behalf after determining that the Borgata discriminated against Plaintiff "because of his age (58) and race, Black." (EEOC Determination Ltr. at 2 in Pl's Doc 26.) However, in September 2005 the EEOC voluntarily withdrew its Complaint against the Borgata, shortly after Plaintiff's deposition. (Not. of Vol. Dismissal in Ex. B to Def.'s Br. Opp. Pl.'s Cross Mot.) The EEOC issued Plaintiff a right-to-sue letter on September 28, 2005. (Ex. C to Def.'s Br. Opp. Pl.'s Cross Mot.)

Thereafter, in December 2005, Plaintiff brought the present action on his own behalf, alleging that the Borgata discriminated against him by failing to properly interview or hire him because of his age, in violation of the ADEA, and his race, in violation of Title VII.

## III. EXHAUSTION

As this Court has explained,

> "Title VII requires plaintiffs to exhaust the administrative process prior to bringing suit." Freed v. Consolidated Rail Corp., 201 F.3d 188, 191 (3d Cir. 2000). Accordingly, Title VII "requires an aggrieved party to file, within 180 days of the alleged discriminatory practice, a charge with the EEOC and receive a 'right to sue' letter before bringing an action against 'the respondent named in the charge.'" Bishop v.

>  Okidata, Inc., 864 F. Supp. 416, 424 (D.N.J. 1994) (quoting 42 U.S.C. § 2000e-5).
>
>  If, after 180 days, the EEOC has not resolved the charge, it must notify the complainant . . . through the issuance of a "right-to-sue" letter, in which the EEOC states that it sees no reason to take action on the complaint. See Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). After 180 days, the complainant on his own may also request a right-to-sue letter. The EEOC must issue the letter promptly on request. See 29 C.F.R. § 1601.28(a)(1). The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII.
>
>  Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001).

Blades v. Burlington County, No. 02-3976 (JBS), 2004 U.S. Dist. LEXIS 30343, 20-21 (D.N.J. Aug. 3, 2004). The record shows that Plaintiff received a right to sue letter, issued September 28, 2005, which indicated that he had ninety days to file his own action, which he did.

**IV.   STANDARD**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence

4

in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998)

(citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1988)).

**V.   ANALYSIS**

Defendant Borgata moves for summary judgment on Plaintiff's race and age discrimination claims, arguing that Plaintiff has no evidence to establish a prima facie case of discrimination on either claim.  Plaintiff opposes and cross moves for summary judgment, arguing, apparently, that Defendant's failure to provide him with a second interview exemplifies a deviation from Borgata's normal hiring practices and suffices to establish discrimination.

Under Title VII, an employer may not "fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e. The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634 prohibits employers, like the Borgata, from refusing to hire individuals older than 40 based on their age.  Because Plaintiff has no direct evidence that Defendant discriminated against him based on race or age, "the familiar McDonnell Douglas Title VII burden-shifting rules apply to plaintiff's claims of discriminatory treatment under ... the ADEA and Title VII." Scott v. IBM Corp., 196 F.R.D. 233, 241 (D.N.J. 2000). See

7

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (framework applies in ADEA cases).

> Under the <u>McDonnell Douglas</u> framework, a plaintiff has the initial burden of establishing a prima facie case either by providing direct evidence of intentional discrimination or circumstantial evidence that would raise the inference that the defendant's conduct was motivated by discriminatory animus. Generally, to establish a prima facie case, the plaintiff must demonstrate that he: (1) belongs to a protected class; (2) was qualified for the position; (3) was fired or not offered the job; and (4) was replaced by a person outside the protected group.
>
> Once the prima facie case has been established, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. This burden is one of production, not persuasion.  The defendant satisfies this burden by introducing evidence which, taken as true, would permit a trier of fact to conclude that unlawful discrimination was not the reason for the discharge or the failure to hire.  It is noteworthy that the defendant need not prove that the proffered reason actually motivated its conduct.  Rather, the evidence submitted by the defendant need only raise a genuine issue of material fact as to whether it discriminated against the plaintiff.
>
> If the defendant is successful in meeting this light burden, the burden then rebounds to the plaintiff to prove, by a preponderance of the evidence, that the defendant's proffered explanation is a pretext for discrimination. "Although the presumption of discrimination 'drops out of the picture' once the defendant meets the burden of

>production . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves[ v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).] The plaintiff must convince the factfinder "'both that the reason was false, and that discrimination was the real reason.'" Shaner [v. Synthes], 204 F.3d [494,] 501 [(3d Cir. 2000)] (quoting Jones v. School Dist. Of Philadelphia, 198 F.3d 403, 412-13 (3d Cir. 1999)(internal citations omitted)). The Court of Appeals for the Third Circuit has held that to discredit the employer's proffered reason:The plaintiff cannot simply show that the employee's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employee's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

Santiago v. City of Vineland, 107 F. Supp. 2d 512, 530 (D.N.J. 2000) (citations omitted).

In this case, Plaintiff has come forward with no direct evidence of discrimination. However, he has produced some evidence of a prima facie circumstantial case of race discrimination. Defendant does not contest that Plaintiff, who identifies his race as Black, is a member of a protected class, was not offered a position for which he applied, and that the

9

position of HVAC mechanic was offered to six white men, and the HVAC lead was offered to one white man, satisfying prongs (1),(3) and (4) of the prima facie case for race discrimination. Further, the record indicates that the individuals who were hired instead of Plaintiff were all younger than him, (EEOC Determination Ltr. at 2.) thus establishing prongs (1), (3) and (4) of a prima facie age claim as well.

There is a material dispute of fact, however, as to whether Plaintiff was qualified for the positions for which he applied, the necessary and final element of the prima facie case. Plaintiff had significant experience in the HVAC trade, working for the federal government as a facilities manager.

However, unlike the individuals who were hired, it is undisputed that Plaintiff had no experience working on the particular brand of equipment that Borgata uses to run its heating and cooling systems and has little experience with computer-operated equipment. Plaintiff argues that in light of his other experience, he was clearly capable of adapting to the small differences in a new brand of equipment and that he did have some experience with computer-run equipment.

By Plaintiff's own admissions, however, he never worked in a casino before (Nelson Dep. at 48, 135, 186), which Borgata had advertised as an essential component of both positions. Nelson was not familiar with the newest HVAC technology or the

colloquialisms used to refer to it. (Id.)  He had little experience working with computer management systems, which operated Borgata's HVAC systems.  (Id. at 52.)  Plaintiff was not adept at reading blueprints as that had not been a requirement of his past work; therefore, he was not confident that he could identify components of a mechanical device from seeing a blueprint.  (Id. at 186-87.)

Further, Plaintiff admitted that no one at Borgata ever said or did anything to him that indicated "that either they or their employer had an age or race bias."  (Id. at 162.)  Plaintiff was aware of no facts or evidence that would suggest that the Borgata didn't desire African-American workers (id. at 183) or that his race and/or age played any role in the decision not to hire him (id. at 192-93).

On the other hand, Defendant came forward with evidence that Robert Page, who was hired as the lead, was more qualified for the job than Plaintiff.  In particular, Page was proficient in the Siemens Building Management System, which is the computer system that Borgata was using to run the HVAC systems on its property, and Page had done a lot of commercial work on equipment like the Trane brand equipment Borgata was using.  (Akeret Dep. at 70 in Ex. H to Def.'s Opp. to Pl.'s Cr. Mot.)  Baker, who was hired as a mechanic, had about twenty years of experience, including several years at Bally's Hotel and Casino, and had

11

owned his own refrigeration business.  (Id. at 75.)  Bennett, who Borgata also hired as a mechanic, had prior experience working for a casino and had a positive employment record with another property that the parent company for Borgata owned. (Id. at 74.) Mr. McKenzie, another mechanic, had a lot of computer skills, including with building management systems, and was an experienced troubleshooter of those systems.  (Id. at 79.)  Jim Perkins, who was also hired as an HVAC mechanic, had also owned his own business, had substantial management experience, and was a very good troubleshooter.  (Id. at 83.)  James Carroll had seventeen years of experience, most of it with Trane equipment, which was the brand of most of Borgata's equipment, and had computer building management experience.  (Id. at 85.)

On Defendant's motion for summary judgment, the Court must view the facts in the light most favorable to Plaintiff and find that he was minimally qualified for the position, despite his lack of computer and building management systems knowledge; therefore he has some evidence of a prima facie case of discrimination.  On Plaintiff's motion for summary judgment, however, the Court must view the facts in the light most favorable to Defendant.  Because a reasonable jury could find that Plaintiff was not qualified for the jobs for which he applied, Plaintiff is not entitled to judgment as a matter of law and the Court must deny his cross motion for summary judgment.

Because Plaintiff has come forward with evidence of a prima facie case, on Defendant's motion for summary judgment the burden of production shifts to the Borgata to come forward with some evidence of a legitimate, nondiscriminatory reason for failing to hire Plaintiff.  This Borgata has done by providing ample evidence that it did not select him because Plaintiff was not as experienced with modern equipment and technology as the individuals that it chose to hire for the Lead and Mechanic positions.  That is more than sufficient to meet this "light burden," even viewing the facts in the light favorable to Plaintiff, because it raises a genuine issue of material fact as to whether Borgata discriminated against Plaintiff.

Plaintiff, therefore, must come forward with some evidence tending to show that Defendant's profferred reason is pretextual.  Although Plaintiff argues that is the case, there is no factual evidence of pretext.  He has presented no evidence suggesting he was better qualified than the persons who were selected for these jobs.  Instead, Plaintiff argues only that Borgata deviated from its hiring procedures by failing to interview or hire him and that after his initial screening interview, Defendant's employee, Marc Puentes, indicated that Plaintiff wold likely be interviewed in a second round.  The failure of Borgata to schedule that interview, he seems to claim, indicates that it discriminated against him.  However, a reasonable jury could not make such an

inference.

First, Puentes was aware of Plaintiff's race during the screening interview; there was no intervening knowledge of Plaintiff's race or age that came to Puentes from which one could infer a newly developed discriminatory motive between the screening interview and the decision not to hire Plaintiff or interview him further.

Second, there is no inference that Borgata's decision to eliminate Plaintiff from further consideration due to his lack of qualifications comparable to those who were selected represents some sort of pretextual deviation that could only be explained by discriminatory animus.  There is simply no evidence of pretext.  Plaintiff is not entitled to a trial based on a hunch; at the summary judgment stage, he must come forward with evidence of his claims of age and race discrimination.  Because he failed to do so, the Court must grant Defendant's motion for summary judgment on the race claim as well.

## V.    CONLCUSION

Even viewing the facts in the light most favorable to Plaintiff, a reasonable jury could not find on the evidence before the Court that Borgata discriminated against him based on his age or race.  Therefore, the Court shall grant Borgata's

14

motion for summary judgment and deny Plaintiff's cross motion. The accompanying Order shall be entered.


**July 23, 2007**               **s/ Jerome B. Simandle**
Date                              Jerome B. Simandle
                                  U.S. District Judge

15